UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ABIGAIL VELEZ,

    Plaintiff,

v.

                                Case No. 1:13-cv-1379
                                Hon. Hugh W. Brenneman, Jr.

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

_____/

## OPINION

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) which denied her claim for disability insurance benefits (DIB) and supplemental security income (SSI).

Plaintiff was born on May 22, 1974 (AR 297).[1] She alleged a disability onset date of January 1, 2003 (AR 297). She completed the 9th grade and had previous employment as a food packer, machine operator and temporary worker (AR 111, 113-18, 302). Plaintiff identified her disabling conditions as manic depression, panic disorder, agoraphobia, migraine headaches, thyroid problems and stomach pain (AR 301). An administrative law judge (ALJ) reviewed plaintiff's claim *de novo* and entered a decision denying benefits on June 12, 2012 (AR 86-99). This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

### I. LEGAL STANDARD

---

[1] Citations to the administrative record will be referenced as (AR "page #").

This court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. §405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Services*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Services*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence *de novo*, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. §§ 404.1505 and 416.905; *Abbott v. Sullivan*, 905

F.2d 918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

"The federal court's standard of review for SSI cases mirrors the standard applied in social security disability cases." *D'Angelo v. Commissioner of Social Security*, 475 F. Supp. 2d 716, 719 (W.D. Mich. 2007). "The proper inquiry in an application for SSI benefits is whether the

3

plaintiff was disabled on or after her application date." *Casey v. Secretary of Health and Human Services*, 987 F.2d 1230, 1233 (6th Cir. 1993).

## II. ALJ'S DECISION

Plaintiff's claim failed at the fifth step of the evaluation. At the first step, the ALJ found that plaintiff had not engaged in substantial gainful activity since the alleged onset date of January 1, 2003 and that she met the insured requirements of the Act through December 31, 2008 (AR 88). At the second step, the ALJ found that plaintiff had the following severe impairments: major depression, generalized anxiety disorder, mild panic disorder without agoraphobia, endometriosis and irritable bowel syndrome (AR 88). At the third step, the ALJ found that through the date last insured, plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (AR 89). Specifically, plaintiff did not meet the requirements of Listings 12.04 (affective disorders) or 12.06 (anxiety related disorders) (AR 89-90).

The ALJ decided at the fourth step:

> [T]hat the claimant has the residual functional capacity to lift and carry up to 20 pounds less than frequently and 10 pounds frequently; stand and walk up to 6 hours and sit up to 6 hours in an 8-hour workday; work limited to environments with a noise intensity level of moderate or less; must avoid concentrated exposure to extremes of cold, heat, humidity, fumes, dusts, gases, odors and poor ventilation and no work outdoors; can understand, carry out, remember and sustain simple instructions independently and make simple work-related judgments and decisions; and respond appropriately to supervision, coworkers and work situations; can only adapt to less than frequent changes in a routine work setting; and no contact with the public.

(AR 91). The ALJ also found that plaintiff was unable to perform her past relevant work (AR 97).

At the fifth step, the ALJ determined that plaintiff could perform a significant number of unskilled, light jobs in the national economy (AR 97-98). Specifically, plaintiff could perform the following work in the regional economy (the State of Michigan): light assembler (14,000 jobs); line attendant (4,800 jobs); and packager (6,300 jobs) (AR 98). Accordingly, the ALJ determined that plaintiff has not been under a disability, as defined in the Social Security Act, from January 1, 2003 (the alleged onset date) through June 12, 2012 (the date of the decision) (AR 98-99).

### III.  ANALYSIS

Plaintiff raised one issue on appeal:

**The Commissioner erroneously failed to give appropriate weight to the opinions of the treating sources, violated agency rules, and misapplied the law.**

Plaintiff contends that the ALJ failed to give appropriate weight to the opinions expressed by her treating physician, Roya Vakili, M.D., whom plaintiff first saw in 2011. Plaintiff's Brief (docket no. 9 at pp. ID## 725-26). According to the vocational expert, Dr. Vakili's opinions regarding the extent of plaintiff's migraine headaches, if accepted, would preclude all employment (AR 137). A treating physician's medical opinions and diagnoses are entitled to great weight in evaluating plaintiff's alleged disability. *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). "In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters v. Commissioner of Social Security*, 127 F.3d 525, 529-30 (6th Cir. 1997). "The treating physician doctrine is based on the assumption that a medical professional who has dealt with a claimant and his maladies over a long period of time will have a deeper insight into the medical condition of the claimant than will a person who has examined a claimant but once, or who has only seen the claimant's medical records." *Barker v. Shalala*, 40 F.3d

789, 794 (6th Cir. 1994). *See* 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2) ("Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations").

Under the regulations, a treating source's opinion on the nature and severity of a claimant's impairment must be given controlling weight if the Commissioner finds that: (1) the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques; and (2) the opinion is not inconsistent with the other substantial evidence in the case record. *See Gayheart v. Commissioner of Social Security*, 710 F.3d 365, 375 (6th Cir. 2013). Finally, the ALJ must articulate good reasons for not crediting the opinion of a treating source. *See Wilson v. Commissioner of Social Security*, 378 F.3d 541, 545 (6th Cir. 2004); 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2) ("[w]e will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion").

The ALJ addressed plaintiff's history of treatment in pertinent part as follows:

> [T]he record indicated the claimant had a history of longstanding reoccurring headaches (Exhibit 6F/57). The claimant reported in the November 2010 consultative examination, that she had migraine headaches five or six times a month in addition to the regular headaches, she had on a near daily basis (Exhibit 8F/l). Office treatment notes from her primary care physicians from September 2011, noted a neurologic referral for chronic headaches for headaches being worse, with neck pain. In addition, the claimant reported going to the emergency room for pain shots on several occasions in the past year. Further, she indicated she was unable to function with migraines, and wanted to go on disability. Moreover, she stated she only had minimal relief from medications, but admitted she did not use them daily. She had a relatively normal sensory and motor exam. She was prescribed Elavil and Flexeril and was cautioned not to take pain medication more than three times a week

> as this could cause rebound headaches (Exhibit 10F; 11F/37-43). Although the claimant has received treatment for the allegedly disabling impairment, that treatment has been essentially routine and conservative in nature. Likewise, the claimant has been prescribed and has taken appropriate medications for the alleged impairments, which weighs in the claimant's favor, but the medical records reveal that the medications have been relatively effective in controlling the claimant's symptoms when taken as prescribed. Thus, I find the claimant limited to work environments with a noise intensity level of moderate or less; must avoid concentrated exposure to extremes of cold, heat, humidity, fumes, dusts, gases, odors and poor ventilation and no work outdoors.
>
> \*   \*   \*
>
> [T]he claimant's headaches were somewhat controlled with medications when taken as prescribed. Although, the claimant testified she has had terrible headaches for years and headaches are mentioned in the record, her headaches were not the focus of her treatment over the years. In addition, the claimant only recently began treatment with a neurologist for Botox injections in effort to treat her headaches. Moreover, while we have an alleged onset date of 2003, the medical evidence of record virtually contains no evidence prior to 2008. Thus, while this inconsistency in the claimant's presentation does not mean she is unimpaired, it supports the conclusion that she retains some ability to work.

(AR 94-95).

Plaintiff's primary care physician, Frank E. Belsito, D.O., referred plaintiff to Dr. Vakili for a neurologic problem, i.e., "chronic headaches that occur every day," with a notation that "MRI have been performed in the past and come back normal" (AR 605). The ALJ addressed Dr. Vakili's opinion expressed in two headache residual functional capacity (RFC) questionnaires as follows:

> Roya Vakili, M.D, completed a headache functional capacity in November 2011 and in May 2012, which noted severe migraine headaches and that the claimant had been treated at the emergency room for pain. Associated symptoms included vertigo, nausea, vomiting, malaise, photosensitivity, visual disturbance, mood changes, mental confusion, has headaches daily to several times per week, lasts hours to all day, lack of sleep, bright lights, noise, stress, strong odors, weather changes, triggers headaches, made worse by bright light, moving around and noise; and were improved by lying in a dark room. He indicated the claimant's emotional factors

somewhat contribute and her headaches cause the claimant to be precluded from performing basic work activities; and needing a break from the workplace and take unscheduled breaks during an 8-hour work day every few hours for 30 minutes to 1 hour, and will need to lie down or sit quietly. Dr. Vakili stated the claimant was incapable of even low stress jobs, due to severe increase in pain, decreased concentration and increased anxiety. Moreover, he stated she would have good and bad days, and would likely miss more than four times a month. Further, he opined the deficits have been in effect for several years (Exhibit 12F; 14 F). The opinion of Dr. Vakili is afforded some weight as the residual functional capacity has been reduced to include triggers regarding, working outside, and including limitations regarding noises and weather issues. The remaining residual functional capacity statements are given little weight. I do not believe that Dr. Vakili was in a position to comment convincingly on the claimant's functionality prior to November of 2011, as he did not see her prior to that date. In addition, his recommended limitations are not supplied by objective evidence or the other evidence of record. (20 CFR 404. 1527(d)(2); 20 CFR 416.927(d)(2); Social Security Ruling 96-2p).

(AR 96).

Plaintiff points out that the ALJ erroneously stated that plaintiff did not see Dr. Vakili "prior to November of 2011" (AR 96). The record reflects that Dr. Vakili saw plaintiff on September 26, 2011 (AR 605-11). However, this was the only time that Dr. Vakili saw plaintiff prior to issuing the headache RFC questionnaire (AR 605-11). On that date, the doctor diagnosed plaintiff with migraine and neck pain (AR 611). The record does not include other examination notes by Dr. Vakili between September 26, 2011 and the issuance of the migraine RFC questionnaire on November 18, 2011 (Exh. 12F). Dr. Vakili's apparent lack of contact with plaintiff is reflected in the second migraine RFC questionnaire dated May 23, 2012 (Exh. 14F), in which the doctor declined to answer a question asking about his "frequency and length of contact" with plaintiff (AR 675). Despite the ALJ's erroneous statement that Dr. Vikali did not see plaintiff prior to November 2011, the record reflects that Dr. Vakili had limited contact with plaintiff, with examination notes from only one visit. Based on the limited medical record, the ALJ was not required to give controlling

weight to Dr. Vakili's work-precluisve opinions expressed in her headache RFC questionnaires, because those opinions were not well-supported by medically acceptable clinical and laboratory diagnostic techniques and were inconsistent with the other substantial evidence in the case record. *See Gayheart*, 710 F.3d at 375. The ALJ provided good reasons for giving some weight to Dr. Vakili's opinion regarding the current triggers for plaintiff's headaches and giving little weight to the balance of the doctor's opinion. Accordingly, plaintiff's claim of error will be denied.[2]

## IV. CONCLUSION

The ALJ's determination is supported by substantial evidence. The Commissioner's decision will be **AFFIRMED** pursuant to 42 U.S.C. § 405(g). A judgment consistent with this opinion will be issued forthwith.


Dated: March 16, 2015 /s/ Hugh W. Brenneman, Jr.
HUGH W. BRENNEMAN, JR.
United States Magistrate Judge

---

[2] On June 26, 2012, two weeks after the ALJ's decision denying benefits, Dr. Vakili wrote a letter stating that he saw plaintiff in his office, that she had chronic migraines on a daily basis, that she cannot function and that "[s]he cannot work at this time" (AR 82). Plaintiff also mentions that medical records filed with the Appeals Council after the ALJ's decision indicate that plaintiff had been treated at a pain institute since January 2012 (AR 141-80) and that on July 3, 2012, Mark Clark, M.D., stated "I suspect that the patient has both migraine as well as cervicogenic component to her headache" (AR 150). However, these documents are not relevant to the ALJ's decision. *See Sizemore v. Secretary of Health and Human Services*, 865 F.2d 709, 711 (6th Cir.1988) (when a plaintiff submits evidence that has not been presented to the ALJ, the court may consider the evidence only for the limited purpose of deciding whether to issue a sentence-six remand under 42 U.S.C. § 405(g)). Finally, the Court notes that plaintiff's brief did not seek a sentence-six remand to consider these additional records.